**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Cano,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-23-00047-PHX-JAT<br><br>**ORDER** |

    Pending before the Court is Plaintiff David Cano's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("SSA" or "Defendant") denial of social security disability benefits. (Doc. 1). Plaintiff filed his opening brief on May 10, 2023, (Doc. 15), Defendant responded on June 9, 2023, (Doc. 18), and Plaintiff filed a reply, (Doc. 19). The Court now rules.

**I.    BACKGROUND**

    The issues presented in this appeal are the following: (1) whether the ALJ erroneously rejected Plaintiff's subjective testimony, and (2) whether the ALJ erred in rejecting the following medical opinions: Dr. Mehta, Physician's Assistant ("PA") Walker, and Dr. Lorber, when determining Plaintiff's residual functional capacity ("RFC").

    **A. Factual Overview**

    Plaintiff was fifty-three years old at the time he applied for disability insurance benefits on April 18, 2018, based on an alleged disability onset date of February 22, 2018. (Doc. 15 at 1). His application was initially denied, but on June 9, 2021, an ALJ issued a

partially favorable decision finding Plaintiff disabled as of August 1, 2019. (*Id.* at 2). The Appeals Council subsequently accepted review to correct the established onset date to April 30, 2019, the date Plaintiff turned fifty-five. (*Id.*; *see also* Doc. 14-3 at 12). Plaintiff thus appeals the decision of the SSA, seeking benefits as of his alleged onset date.

### B.  The SSA's Five-Step Evaluation Process

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows.

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

At step two, if the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

At step three, having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20

C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "[RFC] based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's RFC is the most he can still do despite all his impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the RFC assessment with "the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See* 20 C.F.R. §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

**C. The ALJ's Application of the Five-Step Evaluation Process**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 22, 2018. (Doc. 14-3 at 28).

At step two, the ALJ found that since the alleged onset date, Plaintiff had the following severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease, arthritis, and obesity. (*Id.*). The ALJ further found that beginning on August 1,

2019—the established disability onset date—Plaintiff has had the same severe impairments. (*Id.*).

At step three, the ALJ found that Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). At this stage, the ALJ considered the criteria under sections 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.18 (abnormality of a major joint(s) in any extremity), and 2.07 (disturbance of labyrinthine-vestibular function). (*Id.* at 28–29). The ALJ found that Plaintiff had the RFC

> to perform a light work as defined in (20 CFR 404.1567) with the following additional limitations: [Plaintiff] can occasionally climb ramps and stairs; but never climb ladders, ropes and scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. [Plaintiff] can perform occasional overhead reaching. He can have occasional exposure to extreme cold, vibration, unprotected heights and moving mechanical parts. [Plaintiff] can be exposed to moderate noise.

(*Id.* at 29).

At step four, the ALJ found that since the alleged onset date, Plaintiff was unable to perform any past relevant work, as the past work Plaintiff performed was generally at a heavy level and exceeded Plaintiff's current RFC. (*Id.* at 34).

At step five, the ALJ found that prior to the established onset date of August 1, 2019, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.*). However, the ALJ further found that beginning on August 1, 2019, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 36). As such, the ALJ found Plaintiff was not disabled prior to August 1, 2019, but became disabled on that date and continues to be disabled. (*Id.*).[1]

## II.   LEGAL STANDARD

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747,

---

[1] As noted elsewhere in this Order, the Appeals Council subsequently corrected this date to April 30, 2019, to reflect the actual date Plaintiff turned fifty-five.

750 (9th Cir. 1989) (internal quotation omitted). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Reddick*, 157 F.3d at 720 (internal citation omitted). In other words, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (internal citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the "record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the" ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (internal citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own

judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

### III. DISCUSSION

#### A. Plaintiff's Subjective Testimony

Plaintiff first argues that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's subjective testimony. Specifically, Plaintiff first points out that the Appeals Council in Plaintiff's administrative process found consistency as of April 2019, not August 1, 2019. (Doc. 15 at 11–12). Plaintiff further argues that the ALJ did not properly address July 2018 MRI of Plaintiff's back and neck as objective medical evidence consistent with Plaintiff's testimony. (*Id.* at 12). Plaintiff also asserts that the ALJ did not provide valid reasons to reject Plaintiff's complaints of dizziness. (*Id.* at 14). Plaintiff next argues that the ALJ's citation to Plaintiff's daily activities was "largely unsupported or reflected misunderstandings of the record." (*Id.* at 15). Finally, Plaintiff argues that the ALJ improperly addressed Plaintiff's need for assistive devices to ambulate, discussing it "in passing, without rejecting" Plaintiff's testimony regarding the devices. (*Id.* at 17–18).

Defendant argues that the ALJ properly considered the consistency of Plaintiff's statements with the objective medical evidence as the primary, but not sole, factor in his analysis. (Doc. 18 at 12). Defendant further argues that the ALJ properly considered other inconsistencies between Plaintiff's testimony and the record as a whole, such as the following: that Plaintiff continued work driving a forklift after the alleged onset date, and that the record showed only a prescription for a motorized scooter in December 2020 (none before the established onset date). (*Id.* at 14). Defendant also asserts that Plaintiff's arguments about the ALJ discounting Plaintiff's testimony regarding dizziness both are irrelevant and fail to show error. (*Id.* at 15). In sum, Defendant argues that "[t]he ALJ's findings are reasonably drawn from the record and should be upheld" under the deferential standard with which this Court should treat Plaintiff's appeal. (*Id.* at 16).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of his symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain the credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

The Court first notes that Plaintiff correctly pointed out that he was found to be disabled as of the date his age category changed, which the Appeals Council corrected to April 30, 2019. (*See* Doc. 14-3 at 10–12 (Appeals Council's decision that Plaintiff became disabled on April 30, 2019)). Thus, for purposes of the remainder of this Order, the Court

acknowledges the established onset date to be April 30, 2019. The Court assumes that because the Appeals Council has already made this finding, and because Plaintiff has not specifically asked this Court for relief on this issue, the Court need not take further action on this issue.

The Court next addresses Plaintiff's argument that his need for a cane "supports an award of disability outright." (Doc. 15 at 18). "[A]gency policy does not require that limitations on the ability to stoop and use of a cane result in a finding of disability." *Rincon v. Colvin*, 636 Fed. Appx. 963, 964 (9th Cir. 2016) (citations omitted). Thus, the Court finds this argument unavailing and continues its analysis of the ALJ's discussion regarding Plaintiff's subjective testimony.

The ALJ justified his decision to discount Plaintiff's subjective testimony first by pointing to the following contradictory medical evidence:

> Contrary to the claimant's testimony of significant back and neck pain, a Magnetic Resonance Imaging (MRI) report of the lumbar spine dated July 25, 2018 revealed minimal disc bulge at T12-L1 and mild to moderate central canal stenosis at L1-2 (Exhibits 9F/5, 10F/5). The diagnostic tests and studies do not support the claimant's allegations prior to the established onset date.
> Additionally, prior to the established onset date, a physical examination from May 2018 revealed the claimant was in no acute distress, antalgic gait and station; however, the claimant was using a cane, normal tone and strength with spine, ribs, pelvis, normal alignment, normal tone and strength and negative straight leg raise in the left and right lower extremities (Exhibit 6F/4-5).

(Doc. 14-3 at 30).

The ALJ then addressed the potential impact of Plaintiff's obesity on Plaintiff's "ability to perform routine movement and necessary physical activity within a work environment," finding that "there is no evidence to show it precluded work activities altogether as of the alleged onset date." (*Id.* at 31). The ALJ also noted that Plaintiff's ongoing activities contradicted his subjective testimony, deducing from various pieces of

evidence in the record that Plaintiff "continued to work after his alleged onset date."[2] (*See id.*).

The Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective testimony as to the severity of symptoms prior to the established onset date. The Ninth Circuit Court of Appeals has held that "[t]he standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. Here, based on the evidence the ALJ cited, the Court finds the ALJ provided a rationale sufficient to convince. The mere fact that Plaintiff can point to some evidence supporting his position is insufficient,[3] as "[i]t is not the [C]ourt's role to 'second-guess' an ALJ's reasonable interpretation" of the record. *Id.* at 500 (citations omitted). Thus, the Court finds no reversible error on this basis.

### B. Medical Opinions

#### i. Legal Standard

As of March 27, 2017, the SSA modified the rules for evaluating opinion evidence. See 20 C.F.R. § 404.1520c. According to the new regulations, the ALJ should "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(a). Instead, the ALJ considers the following factors when considering a particular medical opinion in a case: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4)

---

[2] Plaintiff argues that this conclusion is inconsistent with the ALJ's finding at Step One that Plaintiff had not done substantial gainful activity since the alleged onset date. This, among other small misstatements of the record, is not a sufficient basis to reverse the ALJ's decision. To the extent that the ALJ committed error, such error was harmless because although absence of substantiation in the medical record is an insufficient basis to reject testimony, 20 C.F.R. § 404.1529(c)(2), "'[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.'" *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quoting *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)). Because the ALJ cited specific contradictory objective medical evidence, the ALJ's errors are harmless.

[3] The Court further notes that some of the pieces of evidence to which Plaintiff cites are the opinions which this Court concludes that the ALJ reasonably discounted, and thus reasonably did not bear on the ALJ's conclusions. *See infra* Section III.B.

specialization; and (5) other factors. *Id.* § 404.1520c(c)(1)–(5). The most important of these factors are supportability and consistency. *Id.* § 404.1520c(a). The ALJ should "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinion or prior administrative medical findings in [a] determination or decision." *Id.* § 404.1520c(b)(2). An ALJ will "articulate how [the ALJ] considered the medical opinions" and "how persuasive [the ALJ] find[s] all of the medical opinions." *Id.* § 404.1520c(a) and (b)(1).

Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

Additionally, the ALJ does not need to weigh conclusions couched as medical opinions. "A statement by a medical source that [a claimant] is 'disabled' or 'unable to work'" is not a medical opinion. 20 C.F.R. § 404.1527(d)(1). These are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.* that would direct the determination or decision of disability." *Id.* § 404.1527(d).

### ii. Dr. Mehta

Plaintiff argues that the ALJ did not provide valid reasons to reject Dr. Mehta's opinion. Plaintiff points to two opinions from Dr. Mehta: (1) that Plaintiff was "'not able to hold a part-time or full-time job,'" and (2) that Plaintiff had various physical limitations in the length of time he could spend doing certain activities, was unable to complete more than one to two step job duties, and would likely miss six days of work per month. (Doc. 15 at 20). Plaintiff asserts that the ALJ erroneously pointed to Dr. Mehta's reliance on Plaintiff's subjective complaints and determination that Dr. Mehta's opinion was based on

a "transient" point in time. (*Id.*). Plaintiff argues that Dr. Mehta's opinions were consistent with those from other medical providers, and thus the ALJ erred by not considering Dr. Mehta's opinion in light of the underlying treatment records. (*Id.* at 21–22).

Defendant argues that substantial evidence supports the ALJ's treatment of Dr. Mehta's opinion. Defendant first points out that the ALJ is not required to consider separately each opinion by the same medical source. (Doc. 18 at 17). Defendant asserts that the ALJ properly discounted Dr. Mehta's first opinion as being limited in time and thus not probative, and similarly properly discounted the second opinion because it was well after the relevant time period, among other cited reasons. (*Id.* at 17–18).

The ALJ addressed Dr. Mehta's opinion in the following manner:

> These opinions rely heavily on the claimant's subjective complaints and reflects a transient point in time that is not corroborated by the remainder of the objective findings and other opinion evidence. These opinions fail to reveal the type of significant clinical and laboratory abnormalities to be expected if the individual were disabled. Accordingly, the undersigned finds these opinions are inconsistent with the medical evidence and are found to be unpersuasive in the finding of disability.

(Doc. 14-3 at 33).

The Court finds that, although the ALJ did not specifically denote his consistency and supportability analysis, the ALJ nonetheless conducted an analysis that satisfies each term's definition as stated above. The Court first notes that Dr. Mehta's statement that Plaintiff would be unable to hold a job is a conclusion reserved for the SSA, couched as a medical opinion, and thus the ALJ did not need to consider it. The ALJ also correctly noted that Dr. Mehta's opinions reflect a transient point in time—Dr. Mehta's first statement indicated a desire to "reevaluate[] in 2 months." (Doc. 14-9 at 120). His second statement was given on January 8, 2020, well after the established onset date of his disability and thus of little relevance in determining Plaintiff's RFC between February 22, 2018 and April 30, 2019.[4]

---

[4] The Court clarifies that Dr. Mehta's second opinion is at least minimally relevant in that

- 11 -

Additionally, a doctor's opinion that is "'premised to a large extent upon [Plaintiff's] own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Wolfe v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00650-PHX-SPL, 2023 WL 3317076, at *3 (D. Ariz. May 9, 2023) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Here, the ALJ noted that the opinions fail to identify objective medical evidence supporting them; indeed, the record demonstrates that Dr. Mehta relied heavily on Plaintiff's subjective statements. (*See* Doc. 14-10 at 68–69). Because this Court has already found the ALJ properly discounted Plaintiff's subjective testimony, this was a proper justification, among the other reasons listed above, for discounting Dr. Mehta's opinion as unsupportable and inconsistent with the record. Thus, the Court finds no reversible error on this basis.

### iii. PA Walker

Plaintiff next argues that the ALJ failed to provide valid reasons to reject PA Walker's opinion. Plaintiff asserts that the ALJ gave just one reason to reject the opinion—that the "'absolute need for a walker is not shown in the medical evidence of record.'" (Doc. 15 at 24). Plaintiff argues that this was error for the following reasons: (1) "absolute need" is too high of a burden of proof; (2) the ALJ did not provide the level of specificity required when determining no "absolute need"; (3) the fact that PA Walker, Dr. Mehta, and Dr. Lorber all agreed that Plaintiff required a walker "should eliminate any doubt on this issue." (*Id.* at 25).

Defendant argues that the ALJ properly evaluated PA Walker's opinion. Defendant points to the ALJ's finding that there is no evidence in the medical record—other than the prescription for a motorized scooter in December 2020, over a year after the onset date—of Plaintiff's need for or use of an ambulatory device. (Doc. 18 at 19–20). Defendant asserts

---

it was rendered between Plaintiff's alleged onset date and the ALJ decision. *See Martinez v. Astrue*, No. 12-cv-02997-JCS, 2014 WL 310387, at *19 (N.D. Cal. Jan. 28, 2014) (relevant time period for consideration is between the alleged onset date and the date of the ALJ's decision). The Court finds that the second opinion is highly probative in the SSA's finding that Plaintiff became disabled in April 2019, but because the second opinion was rendered many months after the established onset date, the Court finds the ALJ reasonably found it unpersuasive in the time period at issue here.

that the ALJ properly discounted PA Walker's opinion that Plaintiff needed a walker by citing to this objective medical evidence. (*Id.* at 20). Finally, Defendant asserts that the ALJ did, in fact, find PA Walker's opinion otherwise persuasive, "as it is directly in line with the ALJ's ultimate RFC determination for light work." (*Id.*).

The Court agrees with Defendant that, contrary to Plaintiff's assertion that the ALJ rejected PA Walker's opinion outright, the ALJ effectively credited PA Walker's opinion in determining Plaintiff's RFC except to the extent that PA Walker opined that Plaintiff needed an ambulatory device. Thus, the Court needs only to examine whether the ALJ provided substantial evidence to discount this one element of PA Walker's opinion. The ALJ addressed the opinion in the following manner: "the absolute need for a walker is not shown in the medical evidence of record for a consecutive 12-month period." (Doc. 14-3 at 33). The Court finds that the ALJ's statement provides objective evidence addressing consistency and supportability. As for supportability, the ALJ's statement indicated that there was little to no relevant objective evidence supporting the opinion that Plaintiff needed a walker. Similarly, as for consistency, the ALJ's statement indicated that PA Walker's opinion that Plaintiff needed a walker was not consistent with the rest of the medical evidence. Moreover, the Court finds it significant that the ALJ credited the remainder of PA Walker's opinion in his RFC analysis. Thus, the Court finds no reversible error on this basis.

### iv.   Dr. Lorber

Plaintiff further argues that the ALJ erred in rejecting the opinions from testifying medical expert, Dr. Lorber, who testified that he believed Plaintiff met several listed impairments.[5] (Doc. 15 at 22). Plaintiff asserts that the ALJ's finding that Dr. Lorber's opinion was "'partially persuasive in the finding of disability as of the established onset date'" was "unclear and difficult to understand." (*Id.* at 23). Plaintiff further argues that Dr. Lorber's mistakes as to applicable regulatory changes and interpretation of another medical opinion were "relatively immaterial." (*Id.*). Ultimately, Plaintiff argues that the ALJ gave

---

[5] The "listed impairments" here refer to several of the listed impairments generally used in Step Three of the disability determination. *See supra* Section I.B.

no actual basis for rejecting Dr. Lorber's opinion, which was based on objective medical evidence. (*Id.*).

Defendant argues that "[c]ontrary to Plaintiff['s] contention, the ALJ discussed medical expert Dr. Lorber's testimony and opinion at length," and that the ALJ gave "good reasons for finding his opinion was partially persuasive." (Doc. 18 at 18). Defendant lists various reasons the ALJ discussed in his determination that Dr. Lorber's opinion was only partially persuasive. (*See id.* at 18–19). Defendant further asserts that the ALJ's discussion of Dr. Lorber's incorrect belief that PA Walker was not an acceptable opinion was a valid evaluation of Dr. Lorber's "dismissive opinion" which "appeared tainted." (*Id.* at 19). Thus, Defendant argues, substantial evidence supported the ALJ's conclusion as to the weight assigned to Dr. Lorber's opinion. (*Id.*).

The ALJ discussed Dr. Lorber's testimony at length in his decision. (*See* Doc. 14-3 at 31–32). The ALJ acknowledged the various opinions Dr. Lorber expressed and provided the following commentary as justification for considering Dr. Lorber's opinions to be partially persuasive: (1) Dr. Lorber was "unable to explain how or why" he concluded that Plaintiff met several listings, (2) "[w]hen pressed, Dr. Lorber conceded" that the basis on which he classified one of the listings was a basis "he would not rely on . . . in determining the severity of an injury in a clinical setting," (3) Dr. Lorber "incorrectly identified [another medical source's opinion] as finding a medium [RFC]," and (4) Dr. Lorber "adopted the opinion of a physician[] . . . that that [sic] was not supported by a clinical exam but discounted the opinion of a physician's assistant that was supported by an exam," among others. (*Id.*). The ALJ also noted that Dr. Lorber appeared unaware of the rule change addressing acceptable medical sources, and that Dr. Lorber incorrectly identified the physician's assistant opinion as being from a nurse practitioner. (*Id.* at 32).

The Court finds that substantial evidence supports the ALJ's finding that Dr. Lorber's opinion was partially persuasive. As for supportability, the ALJ's discussion indicates that Dr. Lorber's testimony lacked support in objective medical evidence, and when pressed for a supporting explanation, Dr. Lorber stated that the basis for his opinion

was not one he would use in practice. As for consistency, the ALJ pointed to Dr. Lorber's decision to discount an opinion consistent with objective medical evidence in favor of an opinion that was based on no objective evidence. Moreover, the new regulations provide that the ALJ is permitted to consider "other factors." 20 C.F.R. § 404.1520c(c)(1)–(5). In this case, the ALJ noted other factors, such as Dr. Lorber's mischaracterizations of objective evidence, current regulatory standards, and another medical provider's title. The Court finds these to be acceptable "other factors" for the ALJ to have considered. *See Gracia v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01132-PHX-JAT, 2021 WL 3046903, at *5 (D. Ariz. Jul. 20, 2021) (citation omitted) ("The ALJ is responsible for determining the credibility of medical opinions and resolving conflicts in medical testimony"). As such, the Court finds no reversible error on this ground.

### IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 13th day of December, 2023.

James A. Teilborg
Senior United States District Judge